UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LIBERTY MUTUAL INSURANCE CO.,

    Plaintiff,

v.                                                        Case No: 8:24-cv-2593-KKM-LSG

COMPEX LEGAL SERVICES, INC.,

    Defendant.

_____

## ORDER

Liberty Mutual Insurance Co. sues Compex Legal Services, Inc., for overbilling and for refusing to permit a contractually prescribed audit. Compex moves to dismiss Liberty Mutual's claims for declaratory relief, an accounting, and relief under Massachusetts General Laws Chapter 93A. For the reasons below, I grant the motion as to the request for an accounting but deny it as to the other two counts.

I.  BACKGROUND

Liberty Mutual sues Compex, a record retrieval company, in connection with Compex's alleged breach of the parties' Master Services Agreement (MSA). Compl. (Doc. 1) ¶¶ 6–8, 14–34. Liberty Mutual alleges that it "uncovered significant billing irregularities involving services provided by Compex." *Id.* ¶ 14. After conducting a review of Compex's

billing, Liberty Mutual says that it discovered that Compex overbilled it over $2.5 million in 2022 alone across nine fee categories. *Id.* ¶ 15. It also claims that it brought $192,181 in other charges not allowable under their agreement to Compex's attention, and while Compex agreed that Liberty Mutual should not be billed for those types of charges going forward, it did not refund the improperly charged funds. *Id.* ¶ 26.

Liberty Mutual says it repeatedly invoked the MSA's audit provision in response to these discoveries, without much success. When Liberty Mutual first invoked the provision, Compex said it would allow an audit only if Liberty Mutual paid it over $5.8 million in disputed fees and agreed to conditions on the audit. *Id.* ¶ 29. After Liberty Mutual invoked the audit provision twice more, Compex agreed to an audit for 2024 only, subject to conditions not provided for in the agreement. *Id.* ¶¶ 27–34.

In response, Liberty Mutual filed this action. It asserts claims against Compex for breach of contract for the failure to allow an audit under the MSA, *id.* ¶¶ 37–42 (Count I), declaratory judgment that it is entitled to an audit, *id.* ¶¶ 43–51 (Count II), breach of contract for overbilling, *id.* ¶¶ 52–57 (Count III), breach of contract for failure to return the other erroneously charged amounts, *id.* ¶¶ 58–60 (Count IV), an accounting, *id.* ¶¶ 61–64 (Count V), and violation of Massachusetts General Laws Chapter 93A, *id.* ¶¶ 65–73 (Count VI).

Compex moves to dismiss Counts II, V, and VI. *See generally* MTD; FED. R. CIV. P. 12(b)(6).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (alteration in the original) (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, courts accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their

"consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544.

## III. ANALYSIS

Compex fails to justify dismissal of Liberty Mutual's claims for relief under Massachusetts General Laws Chapter 93A and for declaratory judgment. Yet because Liberty Mutual has not alleged facts tending to show that it is eligible for an accounting, Count V is dismissed without prejudice.

### A. Compex Fails to Show that Liberty Mutual's Claim under Massachusetts General Laws 93A Should be Dismissed

Compex argues that Liberty Mutual fails to state a claim under Massachusetts General Laws Chapter 93A because Liberty Mutual fails to plead (1) extortionate conduct, (2) damages beyond those attributable to breach of contract, and (3) a factual nexus with Massachusetts. MTD at 5–9.

Massachusetts law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a); *see id.* § 11. To state a claim under chapter 93A, "a commercial plaintiff must plausibly allege '1) that the defendant engaged in an unfair method of competition or committed an unfair or deceptive act or practice, as defined by [chapter] 93A, § 2, or the regulations promulgated thereunder; 2) a loss of money or property suffered as a result; and

4

3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice.' " *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 540 (1st Cir. 2023) (quoting *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 17 N.E.3d 1066, 1074–75 (Mass. 2014)).

        1.  Liberty Mutual Has Alleged an Unfair or Deceptive Practice

Compex claims that Liberty Mutual has not shown that it engaged in an unfair act or practice because Liberty Mutual does not allege that Compex engaged in conduct that is "extortionate" or "egregiously wrong." MTD at 5–6. Under Massachusetts law, "an act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; and 'causes substantial injury to consumers [or competitors or other businessmen].' " *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (quoting *PMP Assocs., Inc. v. Globe Newspaper Co.*, 321 N.E.2d 915, 917 (Mass. 1975)). The inquiry is highly context dependent. *See Kattar v. Demoulas*, 739 N.E.2d 246, 257 (Mass. 2000).

Compex is correct that Massachusetts courts generally require that a party's conduct have an extortionate quality to turn a run-of-the-mill breach of contract into an unfair business practice. *See, e.g.*, *Columbia Plaza Assocs. v. Ne. Univ.*, 227 N.E.3d 999, 1017 (Mass. 2024) ("Business conduct 'in disregard of known contractual arrangements' and aimed at securing benefits for the breaching party is an unfair act or practice." (quoting

5

*Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806, 821 (Mass. 1991))); *Atkinson v. Rosenthal*, 598 N.E.2d 666, 670 (Mass. App. Ct. 1992). Yet Compex is wrong that Liberty Mutual does not allege that Compex engaged in such an act or practice. Liberty Mutual alleges that Compex disregarded the MSA's audit provision "to secure benefits for Compex," namely payment of almost $6 million and imposition of extracontractual conditions on the audit. Compl. ¶¶ 28–33, 68; *see H1 Lincoln, Inc. v. S. Washington St., LLC*, 179 N.E.3d 545, 557 (Mass. 2022) ("One form that commercial extortion takes is the use of breaches of contract, or threatened breaches, as leverage to extract additional benefits not covered by the contract.").

Liberty Mutual has adequately alleged an unfair business practice under Chapter 93A.

### 2. Liberty Mutual Need Not Allege Damages Unique to its Chapter 93A Claim

Next, Compex argues that Liberty Mutual has not alleged that Compex's unfair conduct has caused Liberty Mutual any harm beyond that caused by the breach of contract. MTD at 7–8. Yet the only case it cites in support such a requirement is *GMO Trust ex rel. GMO Emerging Country Debt Fund v. ICAP plc*, No. CIV.A. 12-10293-DPW, 2012 WL 5197545 (D. Mass. Oct. 18, 2012). MTD at 8. In that case, the court observed that the allegedly unfair practices "did not cause [the plaintiff] any additional harm beyond continuing failure to receive the warrants, which is merely the breach of commercial

6

obligation already addressed by [the plaintiff's] contract claim and not cognizable under chapter 93A." *GMO Tr.*, 2012 WL 5197545, at *10. Yet the cases that *GMO Trust* cites for this requirement stand only for the proposition that a breach alone is not cognizable under chapter 93A—some other unfair conduct is required. *Id.* And other Massachusetts cases suggest that a chapter 93A claim need not allege damages not compensable under other pleaded claims. *See Auto Flat Car Crushers*, 17 N.E.3d at 1077 ("To the extent that a plaintiff already has received compensation for its underlying loss prior to the resolution of its [chapter] 93A claim, such compensation has been treated as an offset against any damages ultimately awarded, rather than as a bar to recovery.").

In the absence of citations to any Massachusetts caselaw requiring damages unique to the chapter 93A claim, Compex has not shown that Liberty Mutual fails to state a claim on this basis.

### 3. Liberty Mutual Need Not Allege a Nexus with Massachusetts

Finally, Compex argues that Liberty Mutual has failed to allege a nexus with Massachusetts. MTD at 8–9; *see* Mass. Gen. Laws ch. 93A, § 11 ("No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth."). Liberty Mutual rightly points out that the burden of proving a lack of connection to Massachusetts lies with Compex, *see*

7

Mass. Gen. Laws ch. 93A, § 11; Resp. (Doc. 22) at 4–5, and the nexus requirement is thus an affirmative defense, *see Amcel Corp. v. Int'l Exec. Sales, Inc.*, 170 F.3d 32, 35 (1st Cir. 1999). "A complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020). As Compex admits that "the Complaint does not provide any facts to determine whether the alleged misconduct occurred in Massachusetts," MTD at 9, dismissal based on the affirmative defense is inappropriate.

In sum, Compex has failed to show that Liberty Mutual's claim under Massachusetts General Laws Chapter 93A should be dismissed.

### B. Liberty Mutual Fails to Allege Facts Supporting an Accounting

Compex next moves to dismiss Liberty Mutual's request for an accounting. MTD at 9–14.

Compex relies on Florida law in its motion, while Liberty Mutual uses Massachusetts law based on the MSA's choice-of-law clause. *See id.*; Resp. at 7–8. The MSA's choice-of-law clause calls for the application of Massachusetts law:

> [A]ll claims or causes of action . . . that may be based upon, arise out of, or relate to this Agreement . . . will be governed by and construed and enforced in accordance with the laws of the Commonwealth of Massachusetts, excluding its principles of conflicts of law.

MSA (Doc. 1-2) at 8. "It is well established" under Florida law "that when the parties to a contract have indicated their intention as to the law which is to govern, it will be governed by such law in accordance with the intent of the parties." *Tribeca Asset Mgmt., Inc. v. Ancla Int'l, S.A.*, 336 So. 3d 246, 248 (Fla. 2022) (quoting *Dep't of Motor Vehicles ex rel. Fifth Ave. Motors, Ltd. v. Mercedes-Benz of N. Am., Inc.*, 408 So. 2d 627, 629 (Fla. 2d DCA 1981)); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941) (holding that federal district courts apply the choice-of-law rules of the state in which they sit). As the parties have freely contracted for Massachusetts substantive law to apply, *see* Compl. ¶ 13, that law applies in this action. While Compex relies on Florida law, the law of Florida and Massachusetts is sufficiently similar in this area that Compex's arguments still apply. *See* Resp. at 7.

      Under Massachusetts law, the equitable remedy of an accounting is available if (1) "there was a fiduciary relation between the parties," or (2) "the account is so complicated that it cannot conveniently be taken in an action at law." *Ball v. Harrison*, 50 N.E.2d 31, 32 (Mass. 1943); *see McQuilly v. Belfi*, 165 N.E.3d 171, 2021 WL 914034, at *4 (Mass. App. Ct. 2021) (per curiam) (table). District courts have a large measure of discretion in whether to order an accounting. *Porter v. Reid*, 79 F. Supp. 898, 907 (D. Mass. 1948); *see Barnia v. Kaur*, 646 F. Supp. 3d 154, 169–70 (D. Mass. 2022). Compex argues that Liberty Mutual has not alleged that it falls into either category justifying an accounting. Compex is right.

1. Liberty Mutual Does Not Plausibly Allege a Fiduciary Relationship

A fiduciary relationship arises under Massachusetts law "(a) as a matter of law, where parties to the subject relationship are cast in archetypal roles, 'such as trustee and [beneficiary], guardian and ward, attorney and client'; or (b) as 'determined by the facts established.'" *UBS Fin. Servs., Inc. v. Aliberti*, 133 N.E.3d 277, 288 (Mass. 2019) (alteration in the original) (citations omitted) (first quoting *Smith v. Smith*, 109 N.E. 830, 832 (Mass. 1915); then quoting *Warsofsky v. Sherman*, 93 N.E.2d 612, 615 (Mass. 1950)). Under the second approach, "fiduciary duties may arise wherever 'faith, confidence, and trust' is reposed by one party 'in another's judgment and advice.'" *Id.* (quoting *Doe v. Harbor Sch., Inc.*, 843 N.E.2d 1058, 1064 (Mass. 2006)). Liberty Mutual argues for the existence of a fiduciary duty only on this second basis.

Yet Liberty Mutual does not adequately allege the existence of such a duty. Liberty Mutual avers that "[t]here is a position of trust between Compex and Liberty Mutual in that, pursuant to the MSA, the parties had a contractual relationship and Liberty Mutual trusted Compex to accurately charge Liberty Mutual according to the MSA." Compl. ¶ 62. "[B]usiness transactions conducted at arm's length generally do not give rise to fiduciary relationships." *Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*, 44 F.3d 40, 44 (1st Cir. 1995) (applying Massachusetts law). Instead, courts look to whether the defendant knew that the plaintiff was relying on his judgment, "the relation of the parties prior to the incidents

10

complained of, the plaintiff's business capacity or lack of it contrasted with that of the defendant, and the readiness of the plaintiff to follow the defendant's guidance in complicated transactions wherein the defendant has specialized knowledge." *Broomfield v. Kosow*, 212 N.E.2d 556, 560 (Mass. 1965); *see Gemini Invs., Inc. v. Ches-Mont Disposal, LLC*, 629 F. Supp. 2d 163, 168 (D. Mass. 2009). Nothing about the parties' transaction suggests that Liberty Mutual—"a global property and casualty insurer," Compl. ¶ 6—relied on Compex's good faith, guidance, and judgment in such a way as to create a fiduciary relationship.

Liberty Mutual cites to *Dahan v. Sussman Shank, LLP*, for the proposition that "overbilling may establish a breach of fiduciary duty claim." Resp. at 8 (quoting *Dahan*, No. 2:16-CV-02547-SVW-AS, 2017 WL 2713737, at *8 (C.D. Cal. Feb. 7, 2017)). *Dahan*, a case applying California law, involved an action by a client against his former attorneys, and the parties did not dispute that existence of a fiduciary relationship. *See* 2017 WL 2713737, at *8; *see also People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 980 P.2d 371, 379 (Cal. 1999) (describing the attorney-client fiduciary relationship). While overbilling may be a breach of a fiduciary duty where one exists, it says nothing about whether a fiduciary relationship exists in the first place.

Liberty Mutual may not seek an accounting on this theory.

11

2. Liberty Mutual Does Not Plausibly Alleged Complicated Accounts

Liberty Mutual also seeks an accounting because its accounts with Compex are so complicated that its claims can be adequately resolved only through the equity power. Resp. at 8; *see Ball*, 50 N.E.2d at 32.[1] Accounts are complicated if a jury could not reasonably and satisfactorily review the accounts and determine the amount owing. *See McQuilly*, 2021 WL 914034, at *5; *see also* 1A C.J.S. *Accounting* § 16 (Dec. 2024 update).

Liberty Mutual's allegations fail to establish that a jury could not satisfactorily determine the amount owing. Liberty Mutual alleges that Compex overcharged it in nine fee categories in 2022. Compl. ¶ 15. The alleged overbilling in some of these fee categories is straightforward. For example, regarding "Subpoena Prep Fees," Liberty Mutual alleges simply that where the MSA provided that Compex would charge Liberty Mutual $10 to prepare a subpoena, Compex sometimes charged $15. *Id.* ¶ 21. And for "Film Custodial Fees," Liberty Mutual alleges that Compex marked its charges up 25% rather than billing Liberty Mutual at cost, as the MSA required. *Id.* ¶ 19. Perhaps the most facially

---

[1] Compex breaks an account's complexity and the inadequacy of a remedy at law out into two distinct prerequisites to seeking an accounting. MTD at 13 ("Assuming, *arguendo*, the Complaint establishes the MSA is sufficiently complex, Liberty Mutual's claim for an equitable accounting still fails because it cannot show that no remedy at law exists."). But the account's complexity is what makes the remedy at law inadequate. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) ("[T]o maintain [a demand for an accounting], the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them." (quoting *Kirby v. Lake Shore & M.S.R. Co.*, 120 U.S. 130, 134 (1887))); *Ball*, 50 N.E. at 32 ("[T]o maintain a bill in equity for an accounting, it must appear from the specific allegations . . . the account is so complicated that it cannot conveniently be taken in an action at law.").

complicated allegations relate to "Vendor Service Fees," which had a contractual fee range of $10 to $272 and Liberty Mutual alleges that Compex billed on 1,972 work orders in 2022, primarily in New Jersey. *Id.* ¶ 22. Yet Liberty Mutual's complaint is that it was charged when it did not request this service, and that it was sometimes charged twice for the same service. *Id.* Liberty Mutual has not alleged the sort of complicated fact pattern involving complicated account structures, transfers, or uses that Massachusetts courts have sometimes found sufficient to support an accounting, *see Orkin v. Albert*, No. CV 21-40060-LTS, 2023 WL 1452055, at *7–8 (D. Mass. Feb. 1, 2023); *Butler v. Moore*, No. CIV. 10-10207-FDS, 2015 WL 1409676, at *99–100 (D. Mass. Mar. 26, 2015), nor has it explained why the ordinary mechanisms of federal civil discovery will be insufficient to reduce the case's complexity to "a manageable level," *Music Suppliers, Inc. v. London Recs., Inc.*, No. CIV.A. 79-2566-G, 1988 WL 34277, at *3 (D. Mass. Feb. 22, 1988); *cf. Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477–79 (1962) (observing that developments in federal civil procedure make it "a rare case" that warrants an accounting).

    Accordingly, Count V is dismissed without prejudice.

### C. Liberty Mutual's Declaratory Judgment Count's Overlap with its Breach of Contract Count Does Not Require Dismissal

Finally, Compex moves for dismissal of Count II, which seeks "a declaration that Compex must comply with the Audit provision of the MSA," because it is redundant and unnecessary. Compl. ¶ 51; *see id.* ¶¶ 43–51; MTD at 14–16; *see also* 28 U.S.C. § 2201.[2]

The overlap between a claim for breach of contract and a request for declaratory relief is not a basis for dismissal. "[T]he duplication of the two claims is permitted by Section 2201, which allows a declaratory judgment 'whether or not further relief is or could be sought' and by Rule 57, Federal Rules of Civil Procedure, which provides that '[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.' " *Askew v. Am. Home Assurance Co.*, No. 8:11-CV-2589-T-23TBM, 2012 WL 13106303, at *1 (M.D. Fla. May 9, 2012) (alteration in the original).

True, Compex cites a variety of cases dismissing declaratory judgment counts for duplicity. MTD at 14–16. But those cases are, without exception, from the Southern

---

[2] Liberty Mutual's Complaint does not specify whether it is seeking declaratory relief under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, or the Massachusetts Declaratory Judgment Act, Mass. Gen. Laws ch. 231A, § 1. Because Massachusetts's declaratory judgment law is purely procedural, it does not apply in federal court in a diversity action. *See Tocci Bldg. Corp. of N.J. v. Va. Sur. Co.*, 750 F. Supp. 2d 316, 320 n.2 (D. Mass. 2010) ("A declaratory judgment action is procedural only. As such, the justiciability of [the plaintiff's declaratory judgment claim] is properly considered under the federal Declaratory Judgment Act, rather than under Massachusetts' Declaratory Judgment Act." (citations omitted)); *cf. Askew v. Am. Home Assurance Co.*, No. 8:11-CV-2589-T-23TBM, 2012 WL 13106303, at *1 (M.D. Fla. May 9, 2012) ("Florida's Declaratory Judgment Act is a procedural mechanism unavailable in an action removed to federal court." (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938))). I thus assume that Liberty Mutual intends to proceed under the federal act.

District of Florida. *See id.* "[T]here is a split of authority on this issue between the Middle and Southern Districts." *Rock Custom Homes, Inc. v. Am. Zurich Ins. Co.*, No. 219CV607FTM38NPM, 2019 WL 4477819, at *2 (M.D. Fla. Sept. 18, 2019). Compex does not explain why I should reject the almost universal consensus in this district that a plaintiff may proceed on both claims. *See Harding v. Fed. Ins. Co.*, No. 6:24-CV-1177-JSS-EJK, 2024 WL 4710170, at *3 n.2 (M.D. Fla. Nov. 7, 2024) (collecting cases). Compex thus fails to justify dismissal of Liberty Mutual's request for declaratory judgment.

## IV. CONCLUSION

Because I dismiss Count V, I grant Liberty Mutual's request for leave to amend. *See* Resp. at 1. Accordingly, the following is **ORDERED**:

1. Defendant Compex Legal Services, Inc.'s Motion to Dismiss (Doc. 19) is **GRANTED IN PART** and **DENIED IN PART**.

2. Count V of plaintiff Liberty Mutual Insurance Co.'s Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.

3. Liberty Mutual may amend its complaint no later than February 18, 2025.

**ORDERED** in Tampa, Florida, on February 3, 2025.

Kathryn Kimball Mizelle
United States District Judge

15