UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LIBERTY MUTUAL
INSURANCE CO.,

    Plaintiff,

v.                                        Case No. 8:24-cv-2593-KKM-LSG

COMPEX LEGAL SERVICES, INC.,

    Defendant.
_____

## ORDER

Compex Legal Services, Inc., counterclaims against Liberty Mutual Insurance Co. *See* Countercl. (Doc. 28). Liberty Mutual moves to dismiss that counterclaim. MTD (Doc. 29). For the reasons below, that motion is granted-in-part and denied-in-part.

### I. BACKGROUND

Per its counterclaim, Compex, a record retrieval company, entered into a Master Services Agreement (MSA) with Liberty Mutual to provide services for Liberty Mutual and one of Liberty Mutual's subsidiaries, Safeco Corporation.

Countercl. ¶¶ 5–8, 10.[1] The MSA required Liberty Mutual to pay Compex within thirty days of receiving "a correct and accurate invoice." *Id.* ¶ 11 (quoting MSA ((Doc. 28) at 20–29) § 4(b)(ii)). If Liberty Mutual disputed a charge, Liberty Mutual had the right to withhold payment after giving "written notice of the dispute together with the reasons for the dispute" and paying the undisputed amount. MSA § 4(f); *see* Countercl. ¶ 13. If Liberty Mutual failed to pay the undisputed amount, the MSA subjected Liberty Mutual to a late fee. Countercl. ¶ 12 (citing MSA § 4(b)(ii)).

Though Liberty Mutual was Compex's biggest client for almost a decade, their relationship began to sour in May 2023 when "Liberty Mutual raised concerns about Compex's invoices and billing." *Id.* ¶¶ 15–16. Compex attempted to work with Liberty Mutual to resolve its concerns. *Id.* ¶ 17. Yet "Liberty Mutual unilaterally began only partially paying the . . . invoices, without proper written notice as required by the MSA." *Id.* ¶ 23.

---

[1] At the motion-to-dismiss stage, I take the allegations in Compex's pleading as true. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Liberty Mutual's allegations are set out in the Complaint, *see* Compl. (Doc. 1), and the order resolving Compex's motion to dismiss, *see* (Doc. 24).

2

In response to Liberty Mutual's billing concerns, Compex conducted an audit and provided Liberty Mutual credits for bills found to be in error. *Id.* ¶¶ 27–28. "Liberty Mutual continued to only partially pay its invoices," remitting to Compex only $2,695,568 of the $6,650,093 that Compex billed Liberty Mutual between August 2023 and July 2024. *Id.* ¶¶ 29–30; *see also id.* ¶¶ 31–32.

After Liberty Mutual filed its six-count complaint, Compex filed a two-count counterclaim for breach of contract (Count I), *id.* ¶¶ 33–37, and violation of Massachusetts General Laws Chapter 93A (Count II), *id.* ¶¶ 38–44. Liberty Mutual moves to dismiss those counterclaims. *See* MTD.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at

555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, courts accept the pleading's factual allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544.

## III.  ANALYSIS

Liberty Mutual attacks both Compex's breach count and its claim under Massachusetts General Law Chapter 93A. The first count survives, but the second does not.

4

### A. Compex States a Claim for Breach of Contact

To start, Liberty Mutual contends that Compex's Counterclaim I "fails to identify any specific term of the contract that Liberty Mutual breached." MTD at 2–3. That is wrong.

To state a claim for breach of contract under Massachusetts law,[2] a party must allege "that [1] there was an agreement between the parties; [2] the agreement was supported by consideration; [3] the plaintiff was ready, willing, and able to perform his or her part of the contract; [4] the defendant committed a breach of the contract; and [5] the plaintiff suffered harm as a result." *Bulwer v. Mount Auburn Hosp.*, 46 N.E.3d 24, 39 (Mass. 2016). Liberty Mutual attacks only the fourth element.

Compex sufficiently alleges that Liberty Mutual breached the MSA. Compex claims—and the attached MSA confirms—that the MSA required Liberty Mutual to pay all undisputed invoices and to tell Compex which invoices Liberty Mutual disputed. Countercl. ¶ 13 (citing MSA § 4(f)). Compex also alleges that Liberty

---

[2] The parties agree that Massachusetts law applies. *See* MTD at 1–2; Resp. (Doc. 31) at 4 & n.3; *see also* MSA § 13(f) ("This Agreement, and all claims or causes of action (whether in contract or tort) that may be based upon, arise out of, or relate to this Agreement, or the negotiation, execution or performance of this Agreement (including any claim or cause of action based upon, arising out of, or related to any representation made as an inducement to enter into this Agreement), will be governed by and construed and enforced in accordance with the laws of the Commonwealth of Massachusetts, excluding its principles of conflicts of law.").

Mutual accumulated a significant unpaid balance and did not give Compex notice of what portion of that balance, if any, Liberty Mutual disputed. *Id.* ¶¶ 23–24, 30–32. Failure to pay an amount due and owing is a quintessential breach of contract. *See Union Inst. for Sav. v. City of Boston*, 129 Mass. 82, 94 (1880) ("If payment be not made when the money becomes due, there is a breach of the contract, and the creditor is entitled to damages."); *Zelby Holdings, Inc. v. Videogenix, Inc.*, 82 N.E.3d 1067, 1072 (Mass. App. Ct. 2017). As Compex alleges that Liberty Mutual failed to pay numerous invoices and did not properly dispute those invoices under the MSA, Compex sufficiently alleges a breach.

### B. Compex Fails to State a Claim Under Chapter 93A

Liberty Mutual next contends that Counterclaim II should be dismissed because (1) it is derivative of Count I (which Liberty Mutual says should be dismissed), and (2) Compex alleges no facts suggesting that Liberty Mutual breached the MSA "in an immoral, unethical, oppressive, extortionate, or unscrupulous manner." MTD at 3–6. For the above reasons, the first argument fails. But the second argument succeeds.

Massachusetts law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen.

Laws ch. 93A, § 2(a); *see id.* § 11. To state a claim under Chapter 93A, "a commercial plaintiff must plausibly allege '1) that the defendant engaged in an unfair method of competition or committed an unfair or deceptive act or practice, as defined by [Chapter] 93A, § 2, or the regulations promulgated thereunder; 2) a loss of money or property suffered as a result; and 3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice.' " *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 540 (1st Cir. 2023) (quoting *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 17 N.E.3d 1066, 1074–75 (Mass. 2014)). As explained in the prior order addressing Compex's motion to dismiss, "Massachusetts courts generally require that a party's conduct have an extortionate quality to turn a run-of-the-mill breach of contract into an unfair business practice." (Doc. 24) at 5–6 (citing *Columbia Plaza Assocs. v. Ne. Univ.*, 227 N.E.3d 999, 1017 (Mass. 2024) ("Business conduct 'in disregard of known contractual arrangements' and aimed at securing benefits for the breaching party is an unfair act or practice." (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806, 821 (Mass. 1991))); *Atkinson v. Rosenthal*, 598 N.E.2d 666, 670 (Mass. App. Ct. 1992)).

    Compex fails to adequately allege facts rendering an unfair practice plausible. Compex claims that

7

> Liberty Mutual deliberately used its size and power as Compex's largest client to withhold payments of undisputed amounts to create economic pressure on Compex to acquiesce to Liberty Mutual's unreasonable and unlawful demands that were inconsistent with the MSA. Essentially, Liberty Mutual was bullying a smaller company into taking actions it was not contractually required to perform.

Countercl. ¶ 42; *see also id.* ¶ 39 ("Liberty Mutual, a large global insurance company, used its position as Complex's largest client to manipulate Compex's billing practices."). These allegations amount to "a formulaic recitation," *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555), of the standard that "[b]usiness conduct 'in disregard of known contractual arrangements' and aimed at securing benefits for the breaching party is an unfair act or practice" under Chapter 93A, *Columbia Plaza Assocs.*, 227 N.E.3d at 1017 (quoting *Anthony's Pier Four, Inc.*, 583 N.E.2d at 821).

Most significantly, Compex does not explain what benefits Liberty Mutual sought to extort from it, saying only that it sought to manipulate its billing practices and force Compex to perform acts it was not obligated to perform. *See* Countercl. ¶¶ 39, 42. That vagueness makes Compex's allegations unlike Liberty Mutual's in its Chapter 93A claim, *see* Compl (Doc. 1) ¶¶ 28–33, 68, in which Liberty Mutual alleged that Compex sought to extract "payment of almost $6 million and [the] imposition of extracontractual conditions on [an] audit." (Doc. 24) at 5–6; *see*

Compl. ¶ 29 ("On April 30, 2024, Compex responded it would agree to an audit only if Liberty Mutual paid disputed amounts to Compex totaling $5,842,573."). Compex's lack of specificity keeps Compex from alleging a plausible claim under Chapter 93A based on a breach of contract. *Cf. Monotype Imaging Inc. v. Deluxe Corp.*, 883 F. Supp. 2d 317, 323 (D. Mass. 2012) (concluding that defendant's "bald assertion" that plaintiff sought to "coerce" defendant into providing new benefits was insufficient to state a claim under Chapter 93A).

## IV.  CONCLUSION

Compex states a claim for breach of contract but not under Chapter 93A. Accordingly, Liberty Mutual Insurance Company's Motion to Dismiss (Doc. 29) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Counterclaim I survives, but Counterclaim II is dismissed without prejudice.

**ORDERED** in Tampa, Florida, on April 29, 2025.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge